Bill GREEN, Diana Marlowe, Paul J.
Osborne, Linda Sams and
Michael Teague

v.

Paul WHITE.

No. CIV–2–82–225.

United States District Court,
E.D. Tennessee,
Northeastern Division.

Feb. 9, 1984.

Charlton R. DeVault, Jr., Kingsport, Tenn., for plaintiffs.

Thomas J. Seeley, Jr. and David R. Shults, Erwin, Tenn., for defendant.

## MEMORANDUM AND ORDER

HULL, District Judge.

This civil rights action, brought by five former employees of the Unicoi County Sheriff's Department, was tried without intervention of a jury on January 26, 1984. The plaintiffs alleged that the defendant Paul White, acting under color of law as Sheriff of Unicoi County, dismissed them from public employment in violation of their constitutional rights of free speech and political association. They claim that they were fired on Sheriff White's first day in office (or in some cases on the evening before) because they had supported the candidacy of the outgoing Sheriff Roby E. Osborne.

It is undisputed that each of the plaintiffs had engaged in constitutionally protected conduct. They had all been hired by the previous sheriff and had actively supported his bid for re-election in the Republican primary. They had placed signs in their yards or on their cars supporting the incumbent sheriff and had vocally expressed their support for him in the community. Political belief and association "... constitute the core of those activities protected by the First Amendment." *Elrod v. Burns*, 427 U.S. 347, 356, 96 S.Ct. 2673, 2681, 49 L.Ed.2d 547, 555 (1976). The law is clear that political association alone cannot be an adequate ground for dismissal from public employment. The only issue in this lawsuit is whether their constitutionally protected activity was a substantial or motivating factor in the decision not to rehire the plaintiffs. *Hildebrand v. Bd. of Trustees of Mich. St. University*, 662 F.2d 439, 443, (6th Cir.1981).

Defendant Paul White, seventy-seven at the time of trial, had been sheriff of Unicoi County in the years 1946–1950. For many years he had been county court clerk, but, in the spring of 1982, when he was approached to run for the office of sheriff, he was retired from public service and in no financial need of employment. He was urged to come out of retirement to oppose the current sheriff Roby Osborne in the Republican primary. Apparently there was considerable dissatisfaction with the existing sheriff, under whose administration the civil service system had been abolished, and who was reputed to have staffed his department with a coterie of family and friends. [Plaintiff Paul Osborne is the brother of Roby Osborne; plaintiff Bill Green, his father-in-law, apparently lived in a trailer behind the jail.] Paul White defeated Roby Osborne 2830 to 980 in the Republican primary and his election in the August 5th general election was thereby assured.

After his victory in the May primary, Paul White began to consult a series of local officials including the County Executive, the Circuit Court Clerk, and the Chief of Police, concerning the selection of his employees. At least one person recommended that none of Sheriff Osborne's staff be retained. Judge M. Haynes Brown testified that he recommended retaining 6 of the 21 Osborne employees. County Executive Howard T. Garland also made him a list of those worth retaining. Bill Jones, Bureau Manager of the *Johnson City Press Chronicle* suggested some people he thought Paul White should retain. None of these men recommended any of the plaintiffs.

A newspaper article appeared indicating that there would be 21 positions open in the new Sheriff's Department and that anyone interested in them, even those currently holding positions with the Sheriff's Department, should apply at the unemployment office at the courthouse. Applications were passed out to current employees of the Sheriff's Department. It appears that everyone understood that there was to be a general house-cleaning. Some witnesses testified that they approached Paul White and asked him to rehire them, promising loyalty. One of the plaintiffs in this action consulted an attorney about her legal position if she were terminated.

Paul White decided to keep about half of the former employees of the Unicoi County Sheriff's Department. On the eve of his taking office, he went to the sheriff's office with a list of those to be terminated. Roby Osborne was there as well as others. His secretary, plaintiff Diana Marlowe, typed out two of the termination notices (hers and that of plaintiff Sams). When she had to fill in the reason for discharge, a discussion ensued. Sheriff-elect Paul White did not know what to indicate. Possibly on the advice of the out-going Sheriff Roby Osborne, the words "not retained due to political change" were typed in. In an act of incredible legal naivete, Paul White signed each of the plaintiffs' termination slips indicating they were being dismissed due to "political change." On at least two occasions, when pressed as to why a particular person was being let go, he responded "politics is politics." This frank admission that political change was the reason for each termination is the essence of the plaintiffs' case.

After the lawsuit was filed, an effort was made to unearth various reasons why each of the plaintiffs might have been fired and an assortment of rumors and accusations was collected. None of them have much significance in this action since they appear to have had little to do with the defendant's decision. However, it is clear that rumors about Sheriff Osborne's department abounded and public dissatisfaction was evident. While Sheriff Paul White used extraordinarily poor judgment in his choice of words in the termination notices, and while the question in this lawsuit is a very close one, this Court does not find that he terminated any of the plaintiffs because of their constitutionally protected activity.

Sheriff White testified that he assumed that most of Sheriff Osborne's staff had

worked for his re-election. Of the eleven eventually retained, it is apparent that several had been open in this support. Defendant White was responding to political pressure he was feeling to clean house at the Sheriff's Department, and his selections appear to have been focused more on who could be saved rather than on who must go. While it is evident that all who were terminated were terminated *because of their association with Sheriff Roby Osborne,* this does not necessarily mean that these firings were of the political patronage type of firings condemned in *Elrod v. Burns, supra.* Particularly in a small-county situation, a fine line must be drawn between political patronage firings, in which a new sheriff dismisses his predecessor's people in order to make room for his own loyalists, and the right of an incoming sheriff to respond to what appeared to be overwhelming public dissatisfaction with a very close-knit group of people in power. *See McBee v. Jim Hogg County, Texas,* 703 F.2d 834 (5th Cir.1983) which creates a personal loyalty exception to *Elrod v. Burns* in the small-county situation.

In this case, defendant White made it publicly known that all the positions at the Sheriff's Department were open and that anyone currently employed by that department must reapply. He made his selections on the strength of the applications filed and on the advice he received from those he trusted. Despite the fact that he admittedly terminated each plaintiff because of "political change," politics itself, and/or retaliation for political activity, does not appear to have been the determinative factor.

Accordingly, judgment will enter in favor of defendant Paul White, and the plaintiffs will take nothing on their claim.